**R.L. TURNER CORPORATION,**
Appellant–Plaintiff,

v.

**TOWN OF BROWNSBURG,**
Appellee–Defendant.

No. 32A01–1008–PL–373.

Court of Appeals of Indiana.

May 6, 2011.

Transfer Granted Sept. 19, 2011.

Michael L. Einterz, Michael L. Einterz, Jr., Einterz & Einterz, Zionsville, IN, Attorneys for Appellant.

Sydney L. Steele, Kevin D. Koons, Kroger Gardis & Regas, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary[1]

R.L. Turner Corporation ("Turner") sued the Town of Brownsburg ("the Town") for tortious interference with a contractual relationship, quantum meruit, and breach of a duty to a third-party beneficiary after the Town allegedly interfered with a settlement agreement regarding a lawsuit between Turner and the Brownsburg Municipal Building Corporation ("BMBC") concerning a construction project. The Town moved for partial summary judgment and/or dismissal of the tortious interference count and dismissal of all other counts. The Town also requested an award of attorney's fees, as-

1. We held oral argument on March 16, 2010, in Indianapolis. We commend counsel on the quality of their advocacy.

serting that Turner's lawsuit was frivolous, unreasonable, and groundless.

The trial court entered its judgment on May 18, 2010. In that judgment, the trial court granted partial summary judgment, or in the alternative, dismissal in favor of the Town on Turner's claim for tortious interference and dismissed all remaining counts of Turner's complaint. The trial court's judgment provided for "costs to be assessed" against Turner but did not specifically mention attorney's fees. Fifty-nine days after that judgment was entered, the Town filed a petition requesting that Turner be assessed $27,410.67 in attorney's fees and expenses. The trial court granted the Town's petition.

Turner appeals the award of fees, asserting that the award was untimely and thus outside the scope of the trial court's authority. Turner also argues that the record does not support a finding that its lawsuit was frivolous, unreasonable or groundless. Determining that the trial court had authority to award fees and that the record supports the trial court's conclusion that Turner's claims were frivolous, unreasonable, or groundless, we affirm the trial court's order.

### Facts and Procedural History

In March of 2005, Turner, a general contractor, entered into a multi-million dollar contract with BMBC to construct a new town hall, police station, and maintenance garage in Brownsburg. Thereafter, Turner and BMBC began having contract disputes regarding the project. On August 21, 2007, Turner filed a complaint against BMBC seeking compensation for the work Turner had performed on the project. Thereafter, on April 29, 2009, a representative of Turner met with Ken Krohne, the president of BMBC, to discuss the possibility of settling the litigation between Turner and BMBC. Krohne, who was leaving for Florida the following day,

signed a written settlement proposal prepared by Turner that was dated April, 30, 2009. BMBC's legal counsel, Sydney Steele, was not notified of and did not have an opportunity to review the proposal. On May 5, 2009, the BMBC board of directors met and "conditionally" approved the settlement proposal subject to some date changes and subject to approval by the Brownsburg Town Council as provided in the proposal. Appellant's App. at 145. Indeed, the proposal specifically provided for the signature of both the president of BMBC and the president of the Brownsburg Town Council. Thereafter, Steele, who was also legal counsel for the Town, was notified of and reviewed the settlement proposal. He recommended that it not be approved by BMBC. Steele also recommended that the Town Council not approve the proposal. Steele informed BMBC that because a quorum was not physically present during the May 5 meeting, it could still rescind its conditional approval of the proposed settlement. On May 14, 2009, the BMBC board of directors rescinded its prior approval of the settlement proposal. Similarly, the Town Council did not approve the proposal.

On October 28, 2009, Turner's attorney sent a confidential letter to Steele indicating that Turner may file suit against the Town for tortious interference with a contract. However, the stated central purpose of the letter was to inform Steele of what Turner believed to be inherent conflicts in Steele's representation of both the Town and BMBC. Thereafter, on December 11, 2009, Turner sued the Town for tortious interference with a business relationship, claiming that a valid and enforceable settlement agreement was made between Turner and BMBC and that the Town intentionally interfered with the business relationship between the parties.

On January 4, 2010, the Town filed a motion to dismiss Turner's complaint. In response, Turner filed an amended complaint against the Town alleging four counts, including tortious interference with a contractual relationship, quantum meruit, and two counts of breach of duty to a third-party beneficiary. The Town responded with a motion to dismiss all four counts of the amended complaint as well as a motion for partial summary judgment on the tortious interference claim. The Town included a request for attorney's fees pursuant to Indiana Code Sections 34–52–1–1 and 34–13–3–21 in both its motion to dismiss and its motion for partial summary judgment, alleging that Turner's claims were frivolous, unreasonable, and groundless.

The trial court held a hearing on the Town's motions for dismissal and partial summary judgment on May 3, 2010. The parties submitted proposed orders to the court, and on May 18, 2010, the trial court granted the Town's motions and entered extensive findings of fact, conclusions thereon, and judgment, which adopted the Town's proposed order verbatim. The judgment provided in relevant part:

> IT IS THEREFORE ORDERED ADJUDGED AND DECREED as follows:
>
> 1. Defendant's motion for partial summary judgment on Count I of the Amended Complaint is GRANTED. Judgment therefore should be and hereby is entered for the defendant, Town of Brownsburg, and against plaintiff, R.L. Turner Corporation, on Count I. Alternatively defendant's motion to dismiss Count I of the Amended Complaint is GRANTED.
>
> 2. Defendant's motion to dismiss all remaining Counts of plaintiff's Amended Complaint is GRANTED, and all remaining Counts and claims are hereby DISMISSED.

> 3. Costs to be assessed against the plaintiff, R.L. Turner Corporation.

Appellee's App. at 21. The judgment did not specifically mention attorney's fees.

Turner did not appeal the trial court's judgment. Thereafter, on July 16, 2010, the Town filed a "Petition for Attorney's Fees as Costs allowed by Law," requesting $27,410.67 in attorney's fees and expenses pursuant to Indiana Code Sections 34–52–1–1(b) and 34–13–3–21. Turner responded, arguing both a lack of foundation for the award of attorney's fees and that the Town's petition was essentially an untimely motion to correct error. The trial court granted the Town's petition for attorney's fees on August 3, 2010. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Attorney's Fees Generally

■ This is an appeal from the trial court's grant of a petition for attorney's fees. We begin by noting that Indiana follows the "American Rule," which provides that litigants must generally pay their own attorney's fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct.App.2009), *trans. denied*. Our legislature has codified an exception to this general rule and provided for fee-shifting in cases where the court finds a party has brought or pursued a frivolous, unreasonable, or groundless claim or defense, or acted in bad faith. *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 659 (Ind.2001).

■ The General Recovery Rule, Indiana Code Section 34–52–1–1, provides in relevant part:

> (a) In all civil actions, the party recovering judgment shall recover costs, except

in those cases in which a different provision is made by law.

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

 (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

 (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

 (3) litigated the action in bad faith.

Indiana Code Section 34–13–3–21 applies to actions brought against a governmental entity in tort and provides that the court "may allow attorney's fees as part of the costs" to a governmental entity prevailing as a party and substantially mirrors the pertinent language of subsection (b) of the General Recovery Rule.[2] Because these statutes are in derogation of the American Rule observed under our common law, we must strictly construe their language. *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 22 (Ind.Ct.App.2000), *trans. denied* (2001).

## II. Attorney's Fees as Costs Pursuant to Indiana Code Sections 34–52–1– 1(b) and 34–13–3–21

Before we reach the merits of the appealed order, the August 3, 2010 fee assessment against Turner, we must first consider in what respect the issue of attorney's fees was or was not covered and decided by the original May 18, 2010 judgment and order. The Town originally asserted a claim for attorney's fees against Turner pursuant to Indiana Code Sections 34–52–1–1(b) and Indiana Code Section 34–13–3–21 in its motion to dismiss and its motion for partial summary judgment. The Town claimed that Turner's action was frivolous, unreasonable, groundless, and pursued in bad faith. Although the Town asserted claims for attorney's fees in those motions, the trial court's judgment of May 18, 2010 in favor of the Town did not specifically provide for an award of attorney's fees to the Town. Instead, the judgment contains the language "costs to be assessed" against Turner. Appellant's App. at 323. The Town contends that the trial court's award of "costs to be assessed" in its judgment was meant to include a future assessment of attorney's fees against Turner pursuant to Indiana Code Sections 34–52–1–1(b) and 34–13–3–21 as requested by the Town. Under the circumstances presented, we agree.

 It is well settled in Indiana that, as a general rule, "costs" is a term of art with a specific legal meaning. *Wiley v. McShane*, 875 N.E.2d 273, 276 (Ind.Ct.App.2007). The term "costs" has been strictly construed to include only filing fees and statutory witness fees, and it does not include attorney's fees. *Id.* "Thus, in the absence of manifest contrary legislative intent, the term 'costs' must be given its accepted meaning which does not include litigation expenses." *Van Winkle v. Nash*, 761 N.E.2d 856, 861 (Ind.Ct.App.2002).

 Here, our legislature has expressly indicated such manifest contrary legislative intent by the statutory language used in the General Recovery Rule, Indiana Code Section 34–52–1–1(b), and its governmental entity counterpart, Indiana Code

---

**2.** We note a subtle difference in the wording of each of the above-mentioned statutes. The General Recovery Rule provides that attorney's fees may be awarded as part of the "cost" to the prevailing party. Indiana Code Section 34–13–3–21 provides for attorney's fees as part of the "costs" to the prevailing governmental entity. We assume that the addition and/or subtraction of an "s" to the word "cost" in either statute was merely an oversight.

Section 34–13–3–21. Those statutes authorize the trial court to award attorney's fees "*as part of*" the cost to the prevailing party upon a finding that litigation has been brought in bad faith or a frivolous, unreasonable, or groundless claim has been pursued. The plain language of the statutes indicates that our legislature contemplated that the term "cost" pursuant to Indiana Code Section 34–52–1–1(b) and the term "costs" pursuant to Indiana Code 34–13–3–21 may, in the trial court's discretion, include attorney's fees.

■ As noted above, the Town requested an award of attorney's fees in its motions to dismiss and for partial summary judgment. The trial court's May 18, 2010 judgment, which granted both motions and was supported by extensive findings of fact and conclusions thereon, clearly suggests by its wording of "costs to be assessed" against Turner that the judgment reserved a future assessment of attorney's fees "*as part of*" the costs, as requested by the Town pursuant to the specific statutes at issue. Indeed, as is often the case, the requested attorney's fees and expenses could not be determined with specificity until after the matter was disposed. Accordingly, we conclude that "costs to be assessed" against Turner included attorney's fees and expenses to be determined and assessed at a later date. The trial court's August 3, 2010 order assessing $27,410.67 in attorney's fees and expenses against Turner was merely the effectuation of that prior judgment.

### III. Post–Judgment Request For Attorney's Fees

■ Assuming for the sake of argument that the trial court's May 18, 2010 judgment did not include an award of attorney's fees "*as part of*" the cost to the Town as the prevailing party pursuant to Indiana Code Sections 34–52–1–1(b) and

34–13–3–21, we next consider the time limitations, if any, that a prevailing party faces in requesting an award of attorney's fees subsequent to the entry of a final judgment that is silent on the issue of fees. Turner characterizes this case as a question of the trial court's jurisdiction to enter the August 3, 2010 fee award. Whether a trial court had jurisdiction is a question of law, which we review de novo. *Kondamuri v. Kondamuri,* 799 N.E.2d 1153, 1156 (Ind. Ct.App.2003), *trans. denied* (2004).

In *K.S. v. State,* 849 N.E.2d 538 (Ind. 2006), our supreme court clarified the concept of jurisdiction. Specifically, the court stated:

Like the rest of the nation's courts, Indiana trial courts possess two kinds of "jurisdiction." Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.

Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.

*Id.* at 540. The *K.S.* court went on to explain that "[a]ttorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension." *Id.* at 541. Indeed, "the fact that a trial court may have erred along the course of adjudicating a dispute does not mean that it lacked jurisdiction." *Id.* Based on the foregoing, the appropriate question in this case is not one of jurisdiction, but rather whether the trial court had authority to award $27,410.67 in attorney's fees pursuant to a request by the Town

made fifty-nine days after final judgment was entered.

■ Here, both parties concede that the trial court's judgment and order entered on May 18, 2010, was a final appealable judgment. A final judgment "disposes of all issues as to all parties thereby ending the particular case." *Georgos v. Jackson,* 790 N.E.2d 448, 451 (Ind.2003). It leaves nothing for future determination. *Id.* This doctrine is formalized in Indiana Appellate Rule 2(H), which provides that a judgment is a final judgment if "it disposes of all claims as to all parties."

■ Turner argues that the Town's post-judgment request for attorney's fees, made fifty-nine days after the entry of a final appealable judgment, was essentially an untimely motion to correct error. Due to the alleged untimely nature of the Town's request, Turner asserts that the trial court was without authority to award fees. A trial court has inherent power to reconsider, vacate, or modify any of its previous rulings so long as the case has not proceeded to final judgment. *Wabash Grain, Inc. v. Bank One, Crawfordsville, NA,* 713 N.E.2d 323, 325 (Ind.Ct.App. 1999). As a practical matter, once a trial court has issued a final judgment, a party seeking reconsideration or modification of that judgment by the trial court is constrained to file a motion to correct error pursuant to Indiana Trial Rule 59. *Waas v. Illinois Farmers Ins. Co.,* 722 N.E.2d 861, 862 (Ind.Ct.App.2000). A motion to correct error shall be filed not later than thirty days after the entry of final judgment or an appealable final order. Ind. Trial Rule 59(C).

The Town disagrees that its post-judgment request for attorney's fees filed fifty-nine days after the entry of final judgment constituted an untimely motion to correct error. The Town argues that its petition for attorney's fees was "simply a post-judgment request for the trial court to award the Town and tax Turner the Town's attorney's fees as costs allowed by law." Appellee's Br. at 5. Accordingly, the Town asserts that a petition for attorney's fees may and should be considered after a final judgment disposes of the underlying litigation. Indeed, the Town argues that the issue of attorney's fees pursuant to Indiana Code Sections 34–52–1–1(b) and 34–13–3–21 does not become "ripe" until after a final judgment has been entered and a "prevailing party" is determined. Appellee's Br. at 10.

The Town cites to our opinions in *Daurer v. Mallon,* 597 N.E.2d 334 (Ind.Ct.App. 1992), *trans. denied,* and *Kintzele v. Przybylinski,* 670 N.E.2d 101 (Ind.Ct.App. 1996), in support of its proposition that a party may request attorney's fees and the trial court may address the issue for the prevailing party after the entry of final judgment. In *Daurer,* the trial court granted summary judgment in favor of the defendant and dismissed him as a party to the case. *Daurer,* 597 N.E.2d at 336. Although the defendant had requested costs and attorney's fees in his motion for summary judgment, the trial court did not address the fee issue in its order granting summary judgment. Consequently, the defendant filed a motion for attorney's fees after the court's entry of summary judgment. On appeal, we found no error in the trial court's consideration of the attorney's fee issue after the entry of a final judgment. *Id.*[3] In doing so, we looked to our

---

**3.** Turner contends that *Daurer* is distinguishable because no final judgment had been rendered, and thus the trial court retained authority to award fees in that case. However, in *Daurer,* because the trial court's summary judgment dismissed the defendant from the case and the dismissal left nothing for the trial court to resolve with respect to that

previous opinion in *Kahn v. Cundiff*, 533 N.E.2d 164, 172 (Ind.Ct.App.1989), *adopted by* 543 N.E.2d 627 (Ind.1989), where we had similarly found no error on the part of a trial court in addressing the attorney's fee issue after its entry of summary judgment. *Id.*

In *Kintzele*, we followed the holding in *Daurer* and concluded that a claim for attorney's fees that had first been asserted in the answer to the complaint was not untimely merely because it was not reasserted until after judgment was entered dismissing the defendants from the case. 670 N.E.2d at 103–04. We concluded that a party is not required to file a claim for attorney's fees pursuant to Indiana Code Section 34–52–1–1 prior to final adjudication. *See id.*; *accord Davidson v. Boone County*, 745 N.E.2d 895, 900 (Ind.Ct.App. 2001) (stating that Indiana Code Section 34–52–1–1(b) does not specifically require that party move for award of attorney's fees prior to final adjudication.)

■■■ Clearly, our case law has treated post-judgment requests for attorney's fees as distinct collateral matters which are not bound by our rules regarding motions to correct error. The law at the time the trial court entered its post-judgment fee award here provided trial courts with the authority to consider and rule upon a post-judgment request for fees. Thus, the trial court had authority to consider the Town's post-judgment fee request and to award attorney's fees to the Town, and we affirm the award on that basis.

However, the parties have requested that we not end our inquiry here. While our case law allows for post-judgment re-

quests and awards of attorney's fees to prevailing parties in frivolous litigation, no Indiana case has purported to limit the trial court's authority to consider the attorney's fee issue following the entry of final judgment. Moreover, neither Indiana Code Section 34–52–1–1(b) nor 34–13–3–21 prescribes a timetable within which the trial court may exercise its authority to award attorney's fees to the prevailing party. Turner cautions us about the trial court's apparent "limitless ability to consider and award attorney fees." Appellant's Reply Br. at 9. Likewise, the Town recognizes the current state of our law and asks for concrete guidance going forward. Accordingly, we offer prospective guidance to practitioners and to trial judges as to when, following the entry of final judgment, a trial court may consider and rule upon the prevailing party's petition for an award of attorney's fees.

In fashioning guidance, we look to our rules of appellate procedure. Indiana Appellate Rule 67(A) provides that "[u]pon a motion by any party within sixty (60) days after the final decision of the Court of Appeals or Supreme Court, the Clerk shall tax costs under this Rule." In this context, "costs" include the filing fee, the cost of preparing the record on appeal, postage, and "additional items as permitted by law." Ind. Appellate Rule 67(B). This Court has stated that these additional items include attorney's fees. *Indiana CPA Soc'y, Inc. v. GoMembers, Inc.*, 777 N.E.2d 747, 753 (Ind.Ct.App.2002) (citing *Commercial Coin Laundry Sys. v. Enneking*, 766 N.E.2d 433, 442 (Ind.Ct.App. 2002)).[4] An award of costs, which includes

---

defendant, we specifically concluded that the trial court's judgment was a final judgment. *Daurer*, 597 N.E.2d at 336.

4. Indiana Appellate Rule 66(E) states that this Court may assess damages if an appeal is

frivolous or in bad faith. As with an assessment of "costs" pursuant to Appellate Rule 67, "damages" pursuant to Appellate Rule 66(E) may include attorney's fees. *Indiana CPA Soc'y*, 777 N.E.2d at 752 n. 1. The stan-

attorney's fees, under this rule is discretionary and may be ordered when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Id.*

Consistent with the time limit prescribed by our appellate rules, and absent guidance by our Supreme Court, we believe that sixty days is a reasonable amount of time within which to permit a prevailing party to file a motion to recover attorney's fees following the entry of final judgment at the trial court level. Turner maintains that permitting a request for attorney's fees after expiration of the thirty-day right to appeal the underlying litigation[5] places an untenable burden on both practitioners and clients when analyzing the costs and benefits of bringing a costly appeal versus merely living with an unfavorable judgment. Turner also cites problems with notice and predictability as to the finality of litigation. While we acknowledge these policy considerations, we note that losing parties face the same uncertainty within the framework of our appellate rules and must make a similar cost-benefit analysis when deciding whether to pursue a petition to transfer an unfavorable decision by our Court to the Indiana Supreme Court while the possibility looms that appellate attorney's fees may be requested and recovered.[6] Until our Supreme Court determines otherwise, we hold that a petition for attorney's fees may be filed by the prevailing party no later than sixty days after final judgment has been rendered.[7]

## IV. *Frivolous, Unreasonable, or Groundless Claims*

Having determined that the trial court had authority to enter a post-judgment award of attorney's fees to the Town, we must next determine whether the record supports the trial court's award of fees based upon the Town's assertion that Turner's lawsuit was frivolous, unreasonable, or groundless. Appellate review of an award of attorney's fees pursuant to Indiana Code Section 34–52–1–1 generally proceeds in three steps. *Smyth,* 901 N.E.2d at 33. First, we review the trial court's findings of fact, if any, under a clearly erroneous standard. *Id.* We will review only the evidence and reasonable inferences drawn therefrom supporting the trial court's findings and decision, and will reverse on this basis only if we are left with a definite and firm conviction that a mistake has been made. *Id.* Second, we review the trial court's legal conclusions de novo. *Id.* The statute " 'vests discretion in the trial court to award fees on finding one or more of the acts described in subsection (b) [of Indiana Code Section 34–52–1–1].' " *Id.* (quoting *Mitchell v. Mitchell,* 695 N.E.2d 920, 925 (Ind.1998)). The final step of our appellate process is to review the trial court's decision whether to award

dard for an award of attorney's fees under both appellate rules appears to be the same. *Id.*

5. Indiana Appellate Rule 9(A) provides that a party initiates an appeal by filing a notice of appeal with the trial court clerk within thirty days after the entry of final judgment.

6. Indiana Appellate Rule 57(C)(1) provides that a petition to transfer shall be filed no later than thirty days after an adverse decision has been issued by this Court.

7. The parties in the instant case agree that the Town filed its petition for attorney's fees on July 16, 2010, fifty-nine days after the entry of final judgment in which the Town became the prevailing party. Accordingly, although we would not retroactively apply a time limit here, we note that the Town's petition was timely filed within the sixty-day time limit we have now prescribed for a post-judgment petition for attorney's fees pursuant to Indiana Code Sections 34–52–1–1(b) and 34–13–3–21.

fees and the amount of those fees under an abuse of discretion standard. *Id.* at 33–34.

Here, the trial court's fee order neither included findings of fact nor any express legal conclusion upon which its award of attorney's fees was based. Because the Town's petition for fees was based upon grounds that Turner's claims were frivolous, unreasonable, and groundless, we review the trial court's order as an implicit conclusion that Turner's claims met one or more of those criteria.[8] *See Emergency Physicians of Indianapolis v. Pettit,* 714 N.E.2d 1111, 1114 (Ind.Ct.App.1999), *adopted in relevant part,* 718 N.E.2d 753 (Ind.1999); *Miller v. Reinert,* 839 N.E.2d 731, 736 (Ind.Ct.App.2005), *trans. denied* (2006). Thus, we review the trial court's conclusion de novo. *Emergency Physicians,* 714 N.E.2d at 1115.

■■■ Pursuant to Indiana Code Section 34–52–1–1(b), a claim or defense is considered frivolous (a) if it is made primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer does not make a good faith and rational argument on the merits of the action, or (c) if the lawyer does not support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Wolfe v. Eagle Ridge Holding Co.,* 869 N.E.2d 521, 530 (Ind.Ct.App.2007). A claim or defense "is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified." *Smyth,* 901 N.E.2d at 33. A claim is groundless if no facts exist

which support the legal claim relied on and presented by the losing party. *Id.*

■■■ Turner's amended complaint was in four counts: tortious interference with a contractual relationship, quantum meruit, and two counts of breach of duty to a third-party beneficiary. In determining whether the trial court properly concluded that Turner's claims were frivolous, unreasonable, and/or groundless, we are constrained by a limited factual record, as this case had proceeded only to the partial summary judgment and dismissal phase. However, even in this context, we find that Turner's lawsuit was frivolous, unreasonable, and groundless.

■■■ Although Turner's amended complaint includes three additional counts against the Town, Turner's claim for tortious interference with a contractual relationship was clearly the backbone of this litigation. A tort claim against a political subdivision, such as the Town, is barred unless notice is filed with "the governing body of that political subdivision" within one hundred eighty days after the loss occurs. Ind.Code § 34–13–3–8(a)(1). The notice "must describe in a short plain statement the facts on which the claim is based" and "must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice." Ind. Code § 34–13–3–10. Compliance with the notice provisions of the Indiana Tort Claims Act is a procedural precedent which the plaintiff must prove and which

---

8. In its appellant's brief, Turner asserts that the trial court was required to make an "express finding" that its lawsuit was frivolous, unreasonable, or groundless, and therefore the trial court's fee order is insufficient to support an attorney's fee award. Appellant's Br. at 17–18. Turner concedes in his reply brief, and eventually conceded at oral argument, that no such requirement exists.

the trial court must determine before trial. *Brown v. Alexander*, 876 N.E.2d 376, 383 (Ind.Ct.App.2007), *trans. denied* (2008). When a plaintiff fails to give the required notice, the defendant has an affirmative defense of noncompliance which must be raised in a responsive pleading. *Id.*[9] Once noncompliance has been raised, the burden shifts to the plaintiff to prove compliance. *Id.*

Turner admits that it did not provide notice to the Town as required by the Indiana Tort Claims Act, but argues substantial compliance by asserting that its confidential letter to the Town's attorney, Steele, regarding Turner's separate lawsuit with BMBC constituted sufficient notice to the Town of its current claims. Failure to strictly conform with the Tort Claims Act notice provisions is not fatal if the claimant demonstrates that he has substantially complied. *Irwin Mortg. Corp. v. Marion County Treasurer*, 816 N.E.2d 439, 446 (Ind.Ct.App.2004). Substantial compliance with the notice requirements is sufficient where the purpose of the notice requirement is satisfied. *Bienz v. Bloom*, 674 N.E.2d 998, 1005 (Ind.Ct.App.1996), *trans. denied* (1997). "The purpose of the notice statute is to inform the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that the political subdivision may investigate, determine its possible liability, and prepare a defense to the claim." *Id.*

No reasonable attorney should believe that a letter marked "confidential" and sent to an attorney regarding a separate lawsuit could constitute actual or substantial compliance with the notice provisions of the Indiana Tort Claims Act. At no time did Turner's attorney attempt to notify the Brownsburg Town Council, the governing body of the Town. The confidential letter sent to Steele does not reference the Indiana Tort Claims Act and even explains that its "central purpose" was to alert Steele of the alleged "inherent conflicts" in his representation of both the Town and BMBC. Appellant's App. at 82. While the letter may have threatened a potential lawsuit, it in no way informed the Town's officials with reasonable certainty of the claim and surrounding circumstances such that the political subdivision could investigate, determine its possible liability, and prepare a defense to the claim.

Turner's failure to comply with the notice requirements of the Tort Claims Act not only supports the trial court's dismissal of Turner's tortious interference claim or, in the alternative, the entry of partial summary judgment on that claim, under the circumstances presented here, Turner's failure also supports the trial court's implicit conclusion that its claim was frivolous and unreasonable. Turner did not make a good faith and rational argument on the merits that it had complied with the notice requirements. Based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney should believe that he had fulfilled the notice requirements. Instead, the record supports a conclusion that Turner knowingly pursued a time-barred claim.

▇▇▇▇ In addition, the trial court specifically dismissed Turner's tortious interference claim and the other three counts of its amended complaint for failure to state a

9. The Town properly raised its affirmative defense of noncompliance with the Tort Claims Act notice provisions in its Indiana Trial Rule 12(B)(6) motion to dismiss. A motion to dismiss for failure to state a claim upon which relief can be granted is a proper responsive motion. *Morton–Finney v. Gilbert*, 646 N.E.2d 1387, 1388 (Ind.Ct.App.1995), *trans. denied.*

claim upon which relief could be granted. Turner takes the position that mere dismissal of its claims is insufficient, by itself, to support a finding that its claims were frivolous, unreasonable or groundless. A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint, not the facts supporting the claims. *Buchanan ex rel. Buchanan v. Vowell*, 926 N.E.2d 515, 519 (Ind.Ct.App.2010). Under notice pleading, a plaintiff need only plead the operative facts involved in the litigation. *Id.* The issue of whether a complaint sufficiently pleads a certain claim turns on "whether the opposing party has been sufficiently notified concerning the claim … so as to be able to prepare to meet it." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 430 (Ind.Ct.App.2003). A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues. *Id.* For a defendant to make efficient and educated legal decisions regarding a case, the complaint must put the defendant on notice concerning why it is potentially liable and what it stands to lose. *Id.*

▮ While Turner acknowledges that it lost on the merits and that its claims were ultimately dismissed for failure to state claims upon which relief could be granted, it is well settled that claims are not rendered frivolous, unreasonable, or groundless simply because a party loses on the merits. *N. Elec. Co. v. Torma*, 819 N.E.2d 417, 431 (Ind.Ct.App.2004), *trans. denied* (2005). Our supreme court has noted:

> Commencing an action against a particular party will less often be frivolous, unreasonable, or groundless than continuing to litigate the same action. Because of the system of notice pleading and pre-trial discovery, commencement of an action may be justified on relatively insubstantial grounds. Thorough representation will sometimes require a lawyer to proceed against some parties solely for the purpose of investigation through pre-trial discovery. In such cases, counsel is expected to determine expeditiously the propriety of continuing such action and to dismiss promptly claims found to be frivolous, unreasonable, or groundless.

*Kahn*, 543 N.E.2d at 629. Still, we must balance those considerations with the additional admonition provided by our Chief Justice:

> The parties who appear in our courts do so on equal footing. For every citizen who files a frivolous pleading, there is a citizen who must spend money to respond. The threshold of frivolity should not be so low that it imposes a tax on responding parties, obligating them to spend money answering baseless claims as a way of encouraging others to be novel.

*Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 154 (Ind.1987) (Shepard, C.J., concurring in result).

▮ As stated, the backbone of Turner's lawsuit was its claim for tortious interference with a contract. To state a claim for tortious interference with a contract, the plaintiff must allege five essential elements, including the existence of a valid and enforceable contract. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind.1994). However, the alleged contract here was a settlement "proposal" drafted by Turner that specifically provided for the signature of the presidents of both BMBC and the Brownsburg Town Council. It is undisputed that the Town Council never approved or accepted the proposal, and the signature of the president of the Brownsburg Town Council was never obtained. The failure of all contemplated parties to accept and sign the written settlement proposal renders

any agreement invalid on its face. Under the totality of the circumstances, no reasonable attorney presented with this incomplete document should conclude that a valid and enforceable contract existed to support the good faith filing and pursuit of a claim for tortious interference with a contract. Turner cannot hide behind our system of notice pleading and pre-trial discovery to justify its frivolous claim. The record supports the trial court's conclusion in this regard, and we will not second-guess that conclusion.

As for the remaining counts for quantum meruit and breach of a duty to a third-party beneficiary, Turner offered the trial court insufficient underlying facts to support those legal theories. Similarly, in its briefs on appeal, Turner has failed to offer this Court any rational factual support for its decision to file or maintain those claims against the Town. Therefore, we conclude that the record supports the implicit conclusion that Turner's additional claims were frivolous, unreasonable and/or groundless. The trial court did not abuse its discretion when it awarded attorney's fees to the Town.

### Conclusion

In sum, we hold that the term "costs" may include attorney's fees pursuant to Indiana Code Sections 34–52–1–1(b) and 34–13–3–21. We further hold that the trial court's original judgment providing for "costs to be assessed" against Turner included an award of attorney's fees and expenses to be effectuated at a later date. Assuming arguendo that the original judgment did not include an award of fees, the trial court here had authority to enter a post-judgment award of attorney's fees to

the Town. Hereafter, post-judgment requests for attorney's fees by a prevailing party in a frivolous lawsuit may be filed no later than sixty-days after final judgment has been rendered. Finally, we hold that the record supports the trial court's conclusion that Turner's lawsuit against the Town was frivolous, unreasonable and/or groundless. Therefore, the trial court acted within its discretion in awarding $27,410.67 in attorney's fees and expenses to the Town.[10]

Affirmed.

NAJAM, and BRADFORD, JJ., concur.

---

**10.** Turner does not challenge the amount of fee award except to say that the trial court's order is unclear as to whether Turner is being twice charged for copying expenses of $67.17 that were already included in the total award of $27,410.67. The Town agrees that those copying expenses were already included in the total amount of $27, 410.67 and does not seek to recover an additional $67.17.